**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL VEGA ENAMORADO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>MOGAO HOSPITALITY INC.,<br>ASTRAEA MANAGEMENT INC.<br>d/b/a UNCLE TED'S MODERN CHINESE CUISINE,<br>JOHN DOE CORPORATIONS 1-10, and<br>DUFAN LI,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff DANIEL VEGA ENAMORADO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against MOGAO HOSPITALITY INC., ASTRAEA MANAGEMENT INC. d/b/a UNCLE TED'S MODERN CHINESE CUISINE, JOHN DOE CORPORATIONS 1-10 ("Corporate Defendants"), and DUFAN LI ("Individual Defendant", and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq*. ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

(1) unpaid overtime premiums; (2) liquidated damages; and (3) attorney's fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premiums; (3) unpaid spread of hours premium; (4) statutory penalties; (5) compensation for late payment of wages; (6) liquidated damages; and (7) attorney's fees and costs.

3. Plaintiff further alleges that, pursuant to the New Jersey Wage and Hour Law ("NJWHL") and the New Jersey Wage Payment Law ("NJWPL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime premiums; (3) statutory penalties; (4) compensation for late payment of wages; (5) liquidated damages; and (6) attorney's fees and costs.

4. Plaintiff further alleges, on behalf of himself and others similarly situated, that Defendants breached contracts Defendants made with them by failing to pay employer payroll taxes for them, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Plaintiff DANIEL VEGA ENAMORADO is a resident of Bronx, New York.

8. Corporate Defendant MOGAO HOSPITALITY INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and service of process address at 1410 BROADWAY, SUITE 3303, NEW YORK, NY10018.

9. Corporate Defendant ASTRAEA MANAGEMENT INC. d/b/a UNLCE TED'S MODERN CHINESE CUISINE is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 38 E 8th St, NEW YORK, NY 10003 and an address for service of process located at 1410 BROADWAY SUITE 3303, NEW YORK, NY 10018.

10. Throughout the relevant period, Corporate Defendant MOGAO HOSPITALITY INC. and Individual Defendant DUFAN LI own and operate multiple restaurants under their common control at the following locations:

a. 38 E 8th St, New York, NY 10003 ("Uncle Ted's Modern Chinese Cuisine" location)
b. 317 Greenwich St, New York, NY 10013 ("Upon the Palace" location);
c. 698 9th Ave, New York, NY 10036 ("The Corner Chinese Food" location);
d. 258 W 109th St, New York, NY 10025 ("Atlas Kitchen" location);
e. 33-75 Prince St. Queens, NY 11354 ("The Solara" location);
f. 110 State Route 33 Manalapan, NJ 07726 ("Peking Pavilion" location);
g. 22 W 38th St, New York, NY 10018 ("Annam Cafe" location, now closed); and
h. 22 W 38th St, New York, NY 10018 ("Wok Up" location, now closed)

(collectively, the "Restaurants," and together with MOGAO HOSPITALITY INC., the "MOGAO Hospitality Group"). *See* **Exhibit A** for Defendants' website showing Defendants' locations.

11. Defendants own and operate the Restaurants as a single integrated enterprise, under the common control of its owners, including Individual Defendant DUFAN LI. *See* **Exhibit B** for

Defendants' website showing Defendants' management team. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a. Individual Defendant DUFAN LI is the founder and CEO of MOGAO Hospitality Group, which he built through acquisitions and the creation of new brands. *See* **Exhibit B**.

b. The Restaurants are jointly advertised on Defendants' website, which lists Uncle Ted's, Peking Pavilion, The Corner, Upon the Palace, Atlas Kitchen, and The Solara together as "OUR BRAND" and identifies MOGAO HOSPITALITY INC.'s address, 1410 Broadway, New York, NY 10018, as the group's central contact. *See* **Exhibit A** for Defendants' website showing Defendants' locations.

c. Defendants' website (https://www.mogaohospitality.com/) presents the Restaurants as the group's own growth. Defendants' website chronicles on a single timeline the group's acquisition of Uncle Ted's as its first restaurant in 2020, its later acquisition of Peking Pavilion, and its launch of The Corner Chinese Food and Upon the Palace as brands created by the group itself. The same timeline reports revenue on a group-wide basis. It also reports a group-level supply and wholesale center. *See* **Exhibit C**.

d. Defendants' website specifically represents that Corporate Defendant MOGAO HOSPITALITY INC. itself centrally provides hospitality investment, operational management, and food and beverage management across all of the Restaurants as unified "core business segments," and that it is through these centralized functions that the Restaurants have been established and are operated. *See* **Exhibit A** at 1.

e. Defendants' LinkedIn page presents all Restaurants as a single "portfolio" and lists 1410 Broadway as the group's headquarters location. See **Exhibit D**.

f. All of the Restaurants use a central human resource and/or payroll department, administered out of MOGAO HOSPITALITY INC.'s offices at 1410 Broadway, New York, NY 10018. Defendants' website lists group-level payroll and finance staff, including a Payroll & HR Coordinator responsible for payroll processing, employee records, onboarding, and HR compliance, as well as a Controller and a Senior Accountant with a payroll background. *See* **Exhibit B**. Defendants also recruit in the name of "Mogao Hospitality Group", posting openings for managerial and front-of-house positions for the entire group. *See* **Exhibit E**.

g. Supplies are interchangeable among the Restaurants. Defendants regularly transfer food, liquor, paper goods, and other supplies between locations, including through daily truck deliveries by Defendants' driver, who told Plaintiff that the goods came from the other locations that use similar menu and ingredients. Plaintiff personally unloaded and stored these deliveries daily. Defendants' website also reports a group-level supply and wholesale center and lists a group-level Supply Chain Manager. *See* **Exhibit B, C**.

h. The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. For example, a busser named Luis [LNU] and a dishwasher also named Luis [LNU], who worked with Plaintiff, were regularly transferred between Plaintiff's Uncle Ted's Modern Chinese Cuisine location and other locations.

12. Corporate Defendants JOHN DOE CORPORATIONS 1-10 are members of Defendant MOGAO HOSPITALITY INC. operating the individual Restaurants located throughout New York and New Jersey. Defendant JOHN DOE CORPORATIONS 1-10, or the entities through which the Restaurants are operated, all have common payroll, common timekeeping, common wage policies, and common human resources, implemented through Defendant MOGAO HOSPITALITY INC.'s centralized payroll and human resources department.

13. Individual Defendant DUFAN LI is an owner and executive officer of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant DUFAN LI exercises, and also delegates to managers and supervisors, the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant DUFAN LI has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant DUFAN LI additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant DUFAN LI ensures that managers implement Defendants' employment policies and

pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

14. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

15. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to food prep workers, sous chefs, cooks, servers, waiters, bartenders, food runners, cashiers, dish-washers and bussers, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

18. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ACTION ALLEGATIONS**

19. Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to food prep workers, sous chefs, cooks, servers, waiters, bartenders, food runners, cashiers, dish-washers and bussers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or the "Class Members").

20. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts upon which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

22. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (1) failing to pay minimum wages, (2) failing to pay overtime premiums, (3) failing to timely pay wages, (4) failing to provide proper wage statements per requirements of NYLL or NJWPL, (5) failing to provide proper wage and hour notices per

requirements of NYLL and NJWPL, and (6) failing to account for employer's FICA obligation by breach of contract.

23. All the Class Members in New York were also subject to the same corporate practices of Defendants of failing to pay spread-of-hours premiums per requirements of NYLL.

24. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

26. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27. Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28. These are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL, the NJWHL, and the NJWPL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their work;

d. Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e. Whether Defendants compensated Plaintiff and Class Members on an illegal fixed salary basis;

f. Whether Defendants paid Plaintiff and Class Members the proper minimum wage pursuant to the NYLL and the New Jersey law;

g. Whether Defendants paid Plaintiff and Class Members their proper overtime rates of one-and-a-half times their regular rate for hours worked over forty in a given week;

h. Whether Defendants paid Plaintiff and Class Members in New York their spread of hours premiums for days worked longer than ten hours pursuant to the NYLL;

i. Whether Defendants paid Plaintiff and Class Members their proper wages for all hours worked;

j. Whether Defendants paid Plaintiff and Class Members their proper wages in a timely manner pursuant to the NYLL and the New Jersey law;

k. Whether Defendants breached the implied covenant of good faith and fair dealing by failing to remit payroll taxes on behalf of Plaintiff and Class Members;

l. Whether Defendants were unjustly enriched by retaining monies that should have been paid to the IRS on behalf of Plaintiff and Class Members;

m. Whether Defendants provided proper wage statements as required under the New York Labor Law and the New Jersey law; and

n. Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL and the New Jersey law.

## STATEMENT OF FACTS

*Employment Background*

29. Plaintiff was hired by Defendants in or around July 2024 to work as a food preparer at Defendants' Uncle Ted's Modern Chinese Cuisine, located at 38 E 8th St, New York, NY 10003, and worked until his termination in or around December 2025.

30. From the start of his employment, until December 2025, Plaintiff was scheduled to work six (6) days a week, Monday through Thursday, from 11:30 a.m. until 9:30 p.m. each day and Friday through Saturday from 11:30 a.m. to 10:00 p.m. for a total of sixty-one (61) hours per week. FLSA Collective Plaintiffs and Class Members were required to work on a similar schedule.

31. Plaintiff's schedule nominally included a 1-hour lunch break and a 15-minute coffee break each day. However, all staff were regularly denied bona fide, duty-free breaks. Every day, Defendants received deliveries of supplies, food, and ingredients, and Defendants interrupted employees' break to have him bring in and store these deliveries in the basement, occurring approximately three to four (3-4) times per week. In addition, whenever the restaurant became busy, Defendants likewise interrupted employees' lunch and coffee breaks and required them to stop eating and return to work. Accordingly, employees' lunch and coffee breaks did not constitute bona fide, duty-free time within the meaning of the FLSA and NYLL, and the entirety of that time must be counted as hours worked. Plaintiff, FLSA Collective Plaintiffs and Class Members were subjected to the same or similar practice of having their breaks interrupted for work-related tasks, such that their breaks likewise did not constitute bona fide, duty-free time.

32. Plaintiff never clocked in or out, and Defendants did not track his hours worked. As a result, Plaintiff was unable to accurately record his actual hours worked each day. FLSA Collective Plaintiffs and Class Members were similarly not required to clock in or out, and Defendants likewise did not track their hours.

33. At all times, Plaintiff was paid a fixed weekly salary regardless of the number of hours he actually worked in a given week. Specifically, Plaintiff was paid $625 per week from approximately July 2024 through January 2025, $725 per week from approximately January 2025 through June 2025, and $800 per week from approximately June 2025 through the end of his employment in December 2025. FLSA Collective Plaintiffs and Class Members were similarly paid at a fixed salary. Although certain employees were paid on an hourly basis, they were similarly shorted their hours as described in ¶¶31-32.

*Unpaid Minimum Wage and Unpaid Overtime Claims*

34. Throughout his employment with Defendants, Plaintiff was paid a fixed weekly salary regardless of the number of hours he actually worked in a given week. Plaintiff was scheduled to work sixty-one (61) hours per week, and he effectively worked at least that many hours because Defendants routinely interrupted his nominal breaks for work and shorted his hours. Accordingly, at all relevant times, Plaintiff regularly worked at least sixty-one (61) hours per week, i.e., forty (40) hours of regular time and at least twenty-one (21) hours of overtime. FLSA Collective Plaintiffs, and Class Members were subject to the same or similar practice.

35. New York's minimum wage applicable to Plaintiff's employment was $16.00 per hour in 2024 and $16.50 per hour beginning January 1, 2025. Because Plaintiff was paid a fixed weekly salary regardless of the sixty-one (61) hours he regularly worked each week, he was not paid at least the applicable minimum wage for all hours worked, resulting in underpayment of minimum wages in violation of the NYLL. New Jersey's minimum wage was $15.13 per hour in 2024 and $15.49 per hour beginning January 1, 2025. Because Class Members were likewise paid a fixed salary regardless of all hours worked, they were similarly not paid the applicable minimum wages for all hours worked, resulting in underpayment of minimum wages in violation of the NJWHL.

36. In addition, there was never an agreement between Plaintiff and Defendants that this fixed salary would cover overtime hours. Throughout his employment, Plaintiff regularly worked more than forty (40) hours in a workweek. Because there was no agreement that his fixed weekly salary covered his overtime hours, those hours went uncompensated, and Plaintiff was never paid the overtime premium of one and one-half times his regular rate. FLSA Collective

Plaintiffs and Class Members similarly worked overtime hours for which they were not paid their proper overtime premiums in violation of the FLSA, the NYLL and the NJWHL.

37. Defendants knowingly and intentionally adopted and maintained a fixed weekly salary pay scheme that they knew resulted in Plaintiff, FLSA Collective Plaintiffs and Class Members being paid below the applicable minimum wage and without the required overtime premium, notwithstanding Defendants' knowledge of the hours regularly worked by Plaintiff, FLSA Collective Plaintiffs and Class Members.

*Spread of Hours Claim*

38. On each workday, Plaintiff arrived before the start of his scheduled shift to change into his work uniform before he could begin his scheduled duties. This pre-shift time extended Plaintiff's actual workday beyond his scheduled 11:30 a.m. to 9:30 p.m. shift from Monday to Thursday, such that the spread of hours on those days exceeded ten (10) hours. In addition, on Fridays and Saturdays, Plaintiff's scheduled shift alone, from 11:30 a.m. to 10:00 p.m., already spanned ten and one-half (10.5) hours, exceeding the ten (10) hour threshold under 12 NYCRR § 146-1.6.

39. Despite working a spread of hours in excess of ten (10) hours on each of the six (6) days he worked per week, Defendants never paid Plaintiff the additional hour of pay at the basic minimum hourly wage rate required under 12 NYCRR § 146-1.6.

40. FLSA Collective Plaintiffs and Class Members in New York were subjected to the same or similar scheduling practices and were similarly not paid the required spread-of-hours premium for days on which their spread of hours exceeded ten (10) hours, in violation of the NYLL.

41. Defendants knowingly and willfully scheduled and required Plaintiff and New York Class Members to work in excess of ten (10) hours per day without paying the additional spread-of-hours pay at the basic minimum hourly wage rate required under 12 NYCRR § 146-1.6, notwithstanding Defendants' knowledge of the hours worked by Plaintiff and New York Class Members.

*Late Payment of Wages Claim*

42. At all relevant times, Defendants failed to timely pay Plaintiff his earned wages. Plaintiff was routinely paid one (1) to three (3) weeks late, at random, and such late payments occurred every month throughout his employment. Similarly, Class Members were subjected to Defendants' practice of delaying payment of their earned wages.

43. Defendants' repeated and systematic delays in paying Plaintiff and Class Members their earned wages caused Plaintiff and Class Members to receive their wages substantially later than when they were due. Under NYLL § 191, Plaintiff and Class Members were manual workers who had to be paid weekly, and not later than seven (7) days after the end of the week in which the wages were earned. Under the NJWPL, N.J.S.A. 34:11-4.2, Class Members had to be paid the full amount of wages due at least twice each calendar month, on regular paydays designated in advance. Defendants' failure to timely pay Plaintiff and Class Members violated the NYLL and the NJWPL.

*Breach of Contract and Unjust Enrichment Claims*

44. At all relevant times, Defendants paid Plaintiff entirely in cash. Similarly, Class members were paid off the books throughout their employment.

45. As a result, Defendants failed to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members.

46. When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

47. By failing to provide proper W-2 forms, Defendants breached the covenant of good faith by denying Plaintiff and Class Members the contract's expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

48. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

49. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

50. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

51. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*WTPA Claims*

52. At all relevant times, Defendants failed to provide proper wage notices and accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

53. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

54. New York courts continue to find sufficient standing to support standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

55. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being

underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

56. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

57. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

58. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL and the NJWPL.

59. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

60. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

61. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

63. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate for their hours worked over forty each week.

64. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs the proper overtime premium of one and one-half times the regular rate of pay for their hours worked

in excess of forty (40) hours per week when Defendants knew or should have known such was due.

65. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

66. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

67. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

68. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

69. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW
## (brought on behalf of the Class Members in New York)

70. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

71. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

72. At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the proper minimum wages for all hours worked due to the fixed salary scheme.

73. At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper overtime compensation at rates of one and one-half times their regular rates of pay for each hour worked in excess of forty (40) in a workweek.

74. At all relevant times, Defendants willfully violated Plaintiff's and New York Class Members' rights by failing to pay them any spread of hours premiums for all their shifts worked in excess of ten (10) hours.

75. At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay for all hours worked weekly, as required by the NYLL § 191(a)(1).

76. At all relevant times, Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members, as required by the NYLL § 195(1).

77. At all relevant times, Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by the NYLL § 195(3).

78. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, unpaid minimum wages, unpaid spread of hour premiums, compensation for late payment of wages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW
## (brought on behalf of the Class Members in New Jersey)

79. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

80. At all relevant times, New Jersey Class Members were employed by the Defendants within the meaning of the NJWHL.

81. At all relevant times, Defendants were employers within the meaning of the NJWHL.

82. At all relevant times, Defendants willfully violated New Jersey Class Members' rights by failing to pay them the applicable minimum wages for all hours worked due to the fixed salary scheme.

83. At all relevant times, Defendants willfully violated New Jersey Class Members' rights by failing to pay them proper overtime compensation at rates of one and one-half times their regular rates of pay for each hour worked in excess of forty (40) in a workweek.

84. Due to Defendants' NJWHL violations, New Jersey Class Members are entitled to recover from Defendants their unpaid overtime compensation, unpaid minimum wages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NJWHL.

## COUNT IV

## VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW
## (brought on behalf of the Class Members in New Jersey)

85. Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

86. At all relevant times, New Jersey Class Members were employed by the Defendants within the meaning of the NJWPL.

87. At all relevant times, Defendants were employers within the meaning of the NJWPL.

88. At all relevant times, Defendants engaged in a policy and practice of not compensating New Jersey Class Members all wages timely, in direct violation of the NJWPL.

89. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NJWPL.

90. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices at the time of hiring, after change in rate of pay, and/or after change in regular payday designated by Defendants, as required under the NJWPL.

91. Due to Defendants' NJWPL violations, New Jersey Class Members are entitled to recover from Defendants unpaid overtime compensation, unpaid minimum wages, compensation for late payment of wages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NJWPL.

**COUNT V**

**BREACH OF CONTRACT**

92. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

93. "[A]ll contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a

reasonable person in the position of the promisee would be justified in understanding were included [in the contract].” *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153.

94. When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

95. Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT VI**

**UNJUST ENRICHMENT**

96. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

97. To state a claim for unjust enrichment, a plaintiff must allege that: “(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.” *Georgia Malone & Co., Inc. v Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotations omitted).

98. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants’ employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either

(1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

99. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NJWHL, and the NJWPL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including minimum wages, due under the NYLL and the NJWHL;

d. An award of unpaid overtime compensation due under the FLSA, the NYLL, and the NJWHL;

e. An award of unpaid spread of hours premiums due under the NYLL;

f. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

g. Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

h. An award of statutory penalties as a result of Defendants' failure to comply with NYLL and NJWPL wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL, and an award of liquidated damages as a result of Defendants' willful failure to pay proper wages pursuant to the NJWHL and the NJWPL;

k. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' fees, expert fees, and statutory penalties;

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of the Class; and

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: October 27, 2026

Respectfully submitted,

By: */s/ C.K. Lee*

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*